ARGUED MARCH 6, 2026; DECIDED APRIL 7, 2026
Nos. 25-1187 and 25-1197

# In the United States Court of Appeals for the District of Columbia Circuit

---

ALON REFINING KROTZ SPRINGS, INC.,

*Petitioner*,

v.

ENVIRONMENTAL PROTECTION AGENCY,

*Respondent*.

---

HF SINCLAIR REFINING & MARKETING LLC AND
HF SINCLAIR PARCO REFINING LLC,

*Petitioners*,

v.

ENVIRONMENTAL PROTECTION AGENCY,

*Respondent*.

---

On Petitions for Review of a Final Action of the
Environmental Protection Agency, 90 Fed. Reg. 41,829 (Aug. 27, 2025)

---

**PETITIONERS' JOINT EMERGENCY MOTION TO ENFORCE THE MANDATE, FOR WRIT OF MANDAMUS, OR TO RECALL THE MANDATE**

---

Daniel J. Feith
    *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C.  20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner
in No. 25-1187*

Allyson N. Ho
    *Counsel of Record*
Stephen J. Hammer
Robert W. Frey
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
(214) 698-3100
aho@gibsondunn.com

*Counsel for Petitioners
in No. 25-1197*

(*additional counsel listed on inside cover*)

Christine M. Buzzard
Lavi M. Ben Dor
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, D.C.  20036
(202) 955-8500

*Counsel for Petitioners
in No. 25-1197*

## INTRODUCTION

This Court has recognized that "the clock is ticking for [petitioners] to obtain meaningful relief" in this case. *Alon Refin. Krotz Springs, Inc. v. EPA*, 172 F.4th 12, 19 (D.C. Cir. 2026). The compliance credits at stake in the exemption petitions this Court held EPA unlawfully denied will expire on September 1. *See id.* "Beyond that point"—and even in the run-up to it—the value of the credits "will decrease significantly." *Id.* So it's critical that EPA decide the petitions well before September 1 "to prevent irreparable injury" to petitioners. *See id.* at 16.

This Court has gone to extraordinary lengths to give EPA ample time to meet that deadline. It expedited merits briefing, rendered judgment just 32 days after argument, and expedited issuance of the mandate. And while the Court saw "no need … at th[e] time" of its opinion to specifically direct EPA to act by August 11, as petitioners had requested, that was because "even if the EPA t[ook] ninety days to reconsider Petitioners' exemption applications"—as EPA claimed it was entitled to do under the Clean Air Act, *see* 42 U.S.C. § 7545(*o*)(9)(B)(iii)—"the agency should still have sufficient time to act well before" the September 1 com-

pliance deadline. *Alon Refin.*, 172 F.4th at 20.  The Court was clear, however, that "if the EPA fails to lawfully adjudicate the petitions on remand," petitioners could "seek[] further relief." *Id.*

It's now been 108 days since the Court set out those instructions, and yesterday, July 23, marked 90 days since the Court issued the mandate.  Yet EPA still hasn't decided petitioners' hardship petitions.

This day shouldn't have come.  Petitioners have made every effort to expedite these cases and avoid irreparable harm, and the Court supported that mission.  Yet EPA is poised to nullify all of that by dragging its feet on a decision it could've made months ago.

EPA's unlawful and unreasonable delay requires petitioners to take up the Court's invitation to seek further relief.  To protect petitioners from the irreparable harm they face from EPA's disregard of both the Court's decision and the Clean Air Act's deadline, the Court should order EPA to decide petitioners' hardship petitions by **August 11**—after which the value of the compliance credits at stake will drop precipitously.  That date—which is 21 days before the September 1 compliance deadline—is the latest that will ensure petitioners have a meaningful opportunity to use, market, or otherwise realize the value of any 2024 credits before the

2

compliance period closes. And because relief is needed in less time than would ordinarily be required for this Court to receive and consider a response, petitioners request that the Court order expedited briefing on this motion and issue a decision by **August 4 at the latest**. *See* D.C. Cir. R. 27(e). EPA opposes the relief requested in this motion.

**BACKGROUND**

In August 2025, EPA denied petitioners' applications for small-refinery exemptions from their 2024 obligations under the Clean Air Act's Renewable Fuel Standard. *Alon Refin.*, 172 F.4th at 15–16. Petitioners promptly challenged those decisions and requested that the Court expedite briefing and review. *Id.* at 16. Petitioners explained that expedition was necessary to ensure meaningful relief if they prevailed in this Court and then received exemptions on remand. *See* Doc. #2135663 at 8–9; Doc. #2139286 at 9–11.

In that scenario, EPA under its current policy would return any 2024 credits—known as "Renewable Identification Numbers" or "RINs"—petitioners used to satisfy their 2024 obligations. *Alon Refin.*, 172 F.4th at 16. But those credits "can be used only for 2024 or 2025 compliance obligations." *Id.* at 16 n.1. When petitioners sought expedition, the 2025

3

compliance deadline—the last day petitioners could use or sell their 2024 RINs—could have been as early as March 31, 2026.  Doc. #2135663 at 9 (citing 40 C.F.R. § 80.1451(f)(1)(i)).  The Court agreed to expedite the case.  *Alon Refin.*, 172 F.4th at 16.

Petitioners' merits briefs emphasized the ongoing need for expedition.  Petitioners asked the Court to order EPA to act on their applications at least 21 days before the 2025 compliance deadline, so that petitioners would not need to sell any returned RINs at fire-sale prices.  *See* Pets. Br. 53; Pets. Reply 33–34; *see also* Doc. #2166565.  At the time of that request, it was unclear whether the compliance deadline would be March 31, June 1, or September 1.  *See Alon Refin.*, 172 F.4th at 19 & n.4; 40 C.F.R. § 80.1451(f).

EPA, meanwhile, claimed it needed 90 days on remand.  *See Alon Refin.*, 172 F.4th at 19.  The agency grounded its request in the statute's command that EPA "shall act" on hardship petitions "not later than 90 days after … receipt."  *Id.* at 20 (quoting 42 U.S.C. § 7545(*o*)(9)(B)(iii)).  EPA didn't explain why it was entitled to an additional 90 days when it

had already taken more than 90 days to issue its initial, unlawful decisions. Recording of Oral Arg. 1:06:15–1:07:24; *see* SJA-AK3; SJA-HFS1 (petitions submitted in May 2025).

On April 7, 2026, the Court issued an opinion and judgment vacating EPA's denial orders and remanding to the agency for further proceedings. *Alon Refin.*, 172 F.4th at 14. The Court credited petitioners' claim that "the clock is ticking for them to obtain meaningful relief" on remand and that prompt action "is necessary to prevent irreparable injury to [petitioners]." *Id.* at 16, 20. The Court nonetheless concluded that ordering EPA to render decisions on the precise timeline petitioners requested—by 21 days before the compliance deadline—"now appears to be unnecessary." *Id.* at 20. By then it was clear that the compliance deadline would be September 1, so "even if the EPA t[ook] ninety days to reconsider Petitioners' exemption applications, the agency should still have sufficient time to act well before" the compliance deadline. *Id.* at 19–20.

The Court warned, however, that although it saw "no need to intervene at this time[,] … [n]othing in our decision forecloses Petitioners from seeking further relief if the EPA fails to lawfully adjudicate the petitions on remand." *Id.* (citing *Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th

5

693, 726 n.19 (D.C. Cir. 2024) (per curiam) ("If EPA fails to act [on remand], Wynnewood could petition the court to compel a response.")).

At petitioners' request, the Court ordered immediate issuance of the mandate on April 24.  Doc. #2170401; *see also* Doc. #2170405 (mandate).  Since then, EPA has never communicated any reason it cannot adjudicate petitioners' hardship applications.  Nevertheless, despite the passage of 90 days since the Court's mandate, EPA still has not decided them.

**ARGUMENT**

I.   **The Court should enforce its mandate or issue a writ of mandamus to compel EPA to decide petitioners' exemption petitions by August 11.**

    A.   **The Court should enforce its mandate.**

"[T]his Court has the power to enforce its mandates, including the power to 'correct any misconception of its mandate by an administrative agency subject to its authority.'"  *Atl. City Elec. Co. v. FERC*, 329 F.3d 856, 858 (D.C. Cir. 2003) (per curiam) (cleaned up) (quoting *Off. of Consumers' Counsel v. FERC*, 826 F.2d 1136, 1140 (D.C. Cir. 1987) (per curiam)).  Even if a party could later seek judicial review of the agency's actions, it "always has recourse to the court to seek enforcement of its

6

mandate." *Consumers' Counsel*, 826 F.2d at 1140; *see also Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984) (per curiam) (motion to enforce mandate goes to the "original panel").

Enforcement of the mandate is warranted here. In its opinion, the Court credited petitioners' explanation that "the clock is ticking for them to obtain meaningful relief" from EPA: the value of the remedy they will receive if EPA grants their exemption petitions on remand "will decrease significantly" as the 2025 compliance deadline set for September 1 approaches. *Alon Refin.*, 172 F.4th at 19–20. The Court also made clear that EPA had *at most* 90 days to decide the exemption petitions, consistent with the statutory deadline for such adjudications. *See id.* (citing 42 U.S.C. § 7545(*o*)(9)(B)(iii)). Indeed, the Court declined petitioners' request that it direct EPA to decide the petitions by 21 days before the compliance deadline because, "*even if the EPA takes ninety days*" to resolve the exemption petitions, "the agency should still have sufficient time to act well before the anticipated RIN-expiration date of September 1, 2026." *Id.* (emphasis added).

The Court's message was unmistakable: EPA was to rule on the exemption petitions in 90 days or less. *See Atl. City*, 329 F.3d at 858

(granting enforcement where "[t]he holding of [the court's] opinion was plain"); *see also Alon Refin.*, 172 F.4th at 20 (remanding for "further proceedings consistent with [the Court's] opinion"). The Court's expedited issuance of the mandate, Doc. #2170401, only underscored the point. Yet the Court's message has gone unheeded, now requiring the Court to enforce its mandate by ordering EPA to decide petitioners' hardship petitions immediately, and in all events by no later than August 11. *See Atl. City*, 329 F.3d at 859.

### B.    Alternatively, mandamus is warranted.

This Court also can and should enforce its mandate by granting a writ of mandamus requiring that EPA issue decisions on petitioners' exemption petitions by August 11. This Court "has authority to issue a writ of mandamus to 'prevent the frustration of orders previously issued.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 856 (D.C. Cir. 2008) (citation omitted). The Court may exercise this "power to compel unreasonably delayed agency activity." *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022); *see* 5 U.S.C. § 706(1); 28 U.S.C. § 1651(a).

Mandamus is warranted when the agency has flouted a "clear duty," there's no "adequate alternative remedy," and the agency's delay

8

in performing its duty is "so egregious as to warrant mandamus." *Ctr. for Biological Diversity*, 53 F.4th at 671.  Each requirement is satisfied here.

First, EPA has violated its "'clear duty' to respond to this Court's remand." *In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 836 (D.C. Cir. 2012) (per curiam); *accord Ctr. for Biological Diversity*, 53 F.4th at 671.  This Court's remand directive was clear:  EPA had to act on petitioners' hardship applications within 90 days.  *See supra* pp. 7–8.  EPA has ignored that command, "frustrat[ing]" the Court's clear expectations. *Ctr. for Biological Diversity*, 53 F.4th at 670.

EPA also violated another clear duty:  its obligation under the Clean Air Act to decide exemption petitions within 90 days.  The Act instructs that EPA "shall act" on petitions "not later than 90 days" after receipt, 42 U.S.C. § 7545(*o*)(9)(B)(iii)—a "mandatory command," *Bufkin v. Collins*, 604 U.S. 369, 379 (2025).  Even setting aside that EPA already took more than 90 days to decide the petitions in the first place, *see supra* pp. 4–5, and assuming the 90-day clock restarted on remand, EPA failed "'to make decisions within the statutory time frame[],'" making this case

"an appropriate subject for mandamus relief." *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 273 (D.C. Cir. 2020) (citation omitted).

Second, to the extent the Court doesn't believe the alternative relief sought here is appropriate, petitioners have no adequate remedy, apart from mandamus, to compel EPA to act in time for petitioners to "obtain meaningful relief" from the agency. *Alon Refin.*, 172 F.4th at 19. Petitioning for review after EPA issues decisions on its own timeline will be insufficient because at that point, petitioners' 2024 RINs will have already expired. So only mandamus relief will "make [petitioners] whole." *Core Commc'ns*, 531 F.3d at 860.

The Clean Air Act's citizen-suit provision doesn't provide a timely and adequate remedy. That provision authorizes suits in the district court when EPA fails to "perform any act or duty under this chapter which is not discretionary." 42 U.S.C. § 7604(a)(2). But petitioners ask this Court to enforce the order it has already issued—a remedy a new lawsuit before a different court obviously can't provide. Moreover, the citizen-suit provision cannot provide timely relief because it requires petitioners to give 60 days' advance notice before filing suit. *Id.*

10

§ 7604(b)(2). There's no time for that notice and to obtain relief from the district court before the RIN-expiration deadline.

Third, EPA's delay is so unreasonable as to justify mandamus. The "'[d]ecisive' factor here" is "EPA's failure to 'heed [this Court's] remand.'" *Ctr. for Biological Diversity*, 53 F.4th at 671 (first alteration in original) (quoting *People's Mojahedin Org.*, 680 F.3d at 837). "In so doing, the agency" has threatened to "effectively nullif[y]" this Court's decision by ensuring that any relief the agency ultimately grants will be meaningless. *Core Commc'ns*, 531 F.3d at 856.

EPA's refusal to act also "insulates its nullification of [the Court's] decision from further review." *Core Commc'ns*, 531 F.3d at 856. This Court's precedents make clear that mandamus is appropriate in these circumstances to ward off an agency's recalcitrance and defiance of court orders. *E.g.*, *id.* at 856–57 (collecting cases); *Ctr. for Biological Diversity*, 53 F.4th at 670–71; *People's Mojahedin Org.*, 680 F.3d at 837–38 (granting mandamus after agency failed to timely act on remand despite statutory deadline).

EPA's delay is also unreasonable under the six nonexclusive *TRAC* factors that often "guide" this Court's assessment of an agency's delay.

11

*Ctr. for Biological Diversity*, 53 F.4th at 670 (citing *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) (*TRAC*)).  Because "EPA has defied both the [Clean Air Act] and this [C]ourt" in failing to render timely decisions and thus "stands alone in opposition to both the judiciary and the legislature," the need for mandamus is especially acute, and "a lesser showing [under *TRAC*] is necessary."  *Id.* at 671; *see People's Mojahedin Org.*, 680 F.3d at 837–38 (granting mandamus without full *TRAC* analysis).

Under *TRAC*, the Court considers (1) the length of the delay, under a "rule of reason" analysis; (2) any statutory deadline or "other indication" of the intended pace of agency review; (3) the nature of the agency's action; (4) collateral effects on other agency priorities; (5) the "nature and extent of the interests prejudiced by delay"; and (6) any "impropriety lurking behind agency lassitude."  *TRAC*, 750 F.2d at 80 (citations omitted).  Those factors further confirm that EPA's delay is unreasonable.

The first and second factors—which focus on whether the agency's delay violates the "rule of reason," as informed by any applicable statutory deadline—squarely favor mandamus.  "The specificity and relative brevity of the [90]-day deadline manifests the Congress's intent that

12

[EPA] act promptly on [an exemption] petition." *People's Mojahedin Org.*, 680 F.3d at 837. EPA's defiance of that exacting deadline and "frustrat[ion] [of] the congressional intent"—particularly given this Court's expectation that EPA would move promptly in light of petitioners' undisputed need for timely action—make its delay unreasonable. *Id.*

The third and fifth factors—which both focus on "the effects of agency delay"—likewise favor relief due to the substantial "interests prejudiced by delay." *Ctr. for Biological Diversity*, 53 F.4th at 670–71. This Court has already credited petitioners' explanation that prompt EPA action "is necessary to prevent irreparable injury to them and to preserve their ability to obtain meaningful relief." *Alon Refin.*, 172 F.4th at 16. Indeed, preserving petitioners' ability to secure real relief was the very reason this Court expedited these cases, quickly issued a decision, and expedited issuance of the mandate.

The remaining factors point in the same direction. Under the fourth factor regarding collateral effects on agency priorities, EPA has identified no urgent, higher-priority agency initiatives that require delaying action on these two individual exemption petitions. *See TRAC,* 750 F.2d at 80. Any such assertion, moreover, would be unpersuasive

13

given Congress's decision, in "set[ting] an exacting deadline," to compel EPA to prioritize exemption petitions and resolve them quickly. *Ctr. for Biological Diversity*, 53 F.4th at 671.

Under the sixth factor concerning the reason for the agency's procrastination, the fact that EPA has "routinely missed" the 90-day statutory deadline and has failed to adopt measures "to ensure that it meets these deadlines," Gov't Accountability Off., *Renewable Fuel Standard* 20 (Nov. 3, 2022), tinyurl.com/3c4xtczs, makes mandamus all the more necessary.  This Court's intervention is the only way to vindicate the mandate, uphold Congress's deadline, and ensure that petitioners can secure the meaningful relief to which they are entitled.

## II.    Alternatively, the Court should recall the mandate and reissue it with instructions to EPA to decide petitioners' exemption petitions by August 11.

If the Court believes its prior mandate did not clearly require EPA to timely decide petitioners' exemption applications, then the Court should recall its mandate and reissue it with instructions to EPA to decide the petitions by August 11.

Federal appellate courts have "an inherent power to recall their mandates" when justified by "extraordinary circumstances." *Calderon v.*

14

*Thompson*, 523 U.S. 538, 549–50 (1998). This Court has recognized that when an agency's "delay and misconstruction of [the] mandate seriously threaten its implementation," recall to clarify the Court's mandate is appropriate—especially when necessary to prevent "an undoubted injustice to appellants." *Dilley v. Alexander*, 627 F.2d 407, 412 (D.C. Cir. 1980).

*Dilley* is illustrative. There, Army reservists challenged the Army's decision to terminate their service, arguing that the military review board which ordered their release was unlawfully constituted. 627 F.2d at 408. The Court agreed and ordered that the reservists "be reinstated to active duty." *Id.* at 409. On remand, the Army claimed the mandate didn't "require retroactive reinstatement" and thus entitled the reservists to less relief than they sought. *Id.* at 410. So the reservists filed a motion for clarification of the mandate, which this Court granted. *Id.* The Court acknowledged that clarification required "a recall of [the] mandate." *Id.* But it found "ample cause" existed to prevent the Army from denying the remedy "envisioned"—albeit not explicitly stated—in the Court's original opinion, particularly given that denial "would result in an undoubted injustice to [the reservists]." *Id.* at 410–12.

15

The same reasoning applies here.  Even if the Court declined to impose a particular deadline, it plainly "envisioned," *Dilley*, 627 F.2d at 411, that EPA would decide petitioners' hardship applications "well before the anticipated RIN-expiration date of September 1," *Alon Refin.*, 172 F.4th at 20; *see also supra* pp. 7–8.  Otherwise, petitioners will face the "undoubted injustice," *Dilley*, 627 F.2d at 412, of receiving RINs whose value has "decrease[d] significantly" due to EPA's unlawful delay, *Alon Refin.*, 172 F.4th at 19.

Furthermore, on the other side of the ledger, the "interests in repose" that normally attach to a mandate, *Calderon*, 523 U.S. at 550 (citation omitted), apply weakly here given the Court's invitation to petitioners to "seek[] further relief if the EPA fails to lawfully adjudicate the petitions on remand," *Alon Refin.*, 172 F.4th at 20.  EPA's refusal to faithfully implement the mandate thus provides "sufficient grounds … to recall [the mandate] and do so for the purpose of … clarif[ying]" that EPA must decide petitioners' applications by August 11.  *Dilley*, 627 F.2d at 412.

## CONCLUSION

The Court should order expedited briefing, decide this motion by August 4 at the latest, and order EPA to render decisions on petitioners' exemption petitions by August 11.

Dated:  July 24, 2026

Respectfully submitted,

*/s/ Daniel J. Feith*
Daniel J. Feith
   *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C.  20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner
in No. 25-1187*

*/s/ Allyson N. Ho*
Allyson N. Ho
   *Counsel of Record*
Stephen J. Hammer
Robert W. Frey
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
(214) 698-3100
aho@gibsondunn.com

Christine M. Buzzard
Lavi M. Ben Dor
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, D.C.  20036
(202) 955-8500

*Counsel for Petitioners
in No. 25-1197*

18

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this document complies with the applicable typeface, type style, and type-volume limitations. This document was prepared using a proportionally spaced typeface (New Century Schoolbook, 14-point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), this document contains 3,198 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this document. In accordance with D.C. Circuit Rule 27(e), counsel for petitioners communicated the relief requested in this motion and the reasons for it to the clerk's office and opposing counsel by call.

July 24, 2026

Respectfully submitted,

*/s/ Allyson N. Ho*

Allyson N. Ho
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
(214) 698-3100
aho@gibsondunn.com

19

## CERTIFICATE OF SERVICE

I hereby certify that, on July 24, 2026, I electronically filed the foregoing document with the Clerk for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

July 24, 2026                    Respectfully submitted,

     */s/ Allyson N. Ho*

Allyson N. Ho
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
(214) 698-3100
aho@gibsondunn.com